UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RANDALL D. ROBERTS                                              PLAINTIFF

V.                          NO. 4:18CV00826 BRW-JTR

ANDREW SAUL,
Commissioner of Social Security Administration[1]              DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, Randall D. Roberts ("Roberts"), applied for disability insurance benefits (Title II) on August 28, 2013, alleging disability beginning on July 1, 2011. (Tr. at 12). His date-last-insured for Title II benefits was December 31, 2014. (Tr. at 1348). After conducting a hearing, the Administrative Law Judge ("ALJ") denied

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

his application in a decision dated April 7, 2015. (Tr. at 18). The Appeals Council denied Roberts's request for review. (Tr. at 1). After Roberts filed a complaint in this Court seeking review, Judge Wilson remanded the case for further development. (Tr. at 1432-1436). During the pendency of that District Court case, Roberts filed an application for supplemental security income benefits (Title XVI). (Tr. at 1348).

A second hearing was held on October 6, 2017. (Tr. at 1348). The ALJ denied Roberts's application in a decision dated December 19, 2017, finding that Roberts was not disabled for the relevant time-period for Title II benefits (from the alleged onset date of July 1, 2011 through the date-last-insured of December 31, 2014). (Tr. at 1348-1360). Concurrently, the ALJ determined that Roberts was disabled after December 31, 2014, for purposes of his Title XVI application. (Doc. No. 11, at 2). The Appeals Council denied Roberts's request for review of the ALJ's decision denying benefits. (Tr. at 1335, 1573). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Roberts has filed a Complaint seeking judicial review from this Court.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II.  The Commissioner's Decision:

The ALJ found that Roberts had not engaged in substantial gainful activity since his alleged onset date of July 1, 2011 through December 31, 2014. (Tr. at

1350). At Step Two, the ALJ found that Roberts has the following severe impairments: degenerative disk disease, affective disorder, anxiety disorder, and personality disorder. (Tr. at 1351).

After finding that Roberts's impairments did not meet or equal a listed impairment (Tr. at 1351), the ALJ determined that Roberts had the residual functional capacity ("RFC") to perform the full range of sedentary work, except that: (1) he could only occasionally climb, balance, crawl, kneel, stoop, and crouch; (2) he could only occasionally reach overhead bilaterally; (3) he is limited to simple, routine, and repetitive tasks in a setting where interpersonal contact is incidental to the work performed; and (4) he could respond to supervision that is simple, direct, and concrete.[2] (Tr. at 1353).

The ALJ found that, based on Roberts's RFC, he was unable to perform any of his past relevant work. (Tr. at 1358). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Roberts's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, including work as circuit board assembler, a driver escort, and a document preparer. (Tr. at 1359).[3] Thus, the ALJ found that Roberts was not

---

[2] The mental limitations in the RFC corresponded to unskilled work. (Tr. at 1359).

[3] There was some discussion at the hearing about whether the reaching requirements of the listed jobs

disabled from July 1, 2011 through December 31, 2014. (Tr. at 1360).

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*,

---

were beyond Roberts's abilities, but the VE properly relied on his experience and expertise to address that question. (Tr. 1396-1400). In any event, Roberts did not raise that issue in his brief.

784 F.3d at 477. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

    B.   Roberts's Arguments on Appeal

Roberts contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that: (1) the ALJ erred at Step Two by not finding knee problems, hearing loss, obesity, and psoriasis to be severe impairments; (2) the ALJ did not fully develop the record and should have ordered a follow-up consultative examination; and (3) the RFC did not fully incorporate Roberts's limitations. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

While much of the 2800-page record consisted of VA records outside of the relevant time-period, the evidence did show that Roberts suffered from lumbar and cervical pain, and objective testing showed mild-to-moderate conditions. X-rays of the cervical and lumbar spine showed that Roberts had some loss of disc height and degenerative changes, with spurring of the vertebral bodies. (Tr. at 541-547, 776-781, 1356-1357). However, at a June 2012 consultative examination by Dr. Rex Ross, M.D., Roberts had normal range of motion in all joints, no muscle weakness, no muscle atrophy, and no sensory abnormalities. *Id*. He had negative straight-leg

5

raise and normal gait and coordination. *Id.* Dr. Ross assessed no limitations on Roberts's abilities to walk, sit, or stand. *Id*. He assessed mild limitations on seeing and lifting. *Id*.

At a 2013 consultative examination with Dr. Andrew Wilkins, M.D., Roberts's demonstrated full range of motion in all joints, normal muscle strength and reflexes, and normal gait and station. (Tr. at 559-561). Dr. Wilkins assessed mild-to-moderate limitations on walking, standing, sitting, lifting, and carrying, based on symptoms of low back pain. *Id*. Dr. Wilkins said an assistive gait device was not necessary. *Id.*

The Disability Determination Services ("DDS") medical experts reviewed the file and found Roberts capable of medium work, with occasional stooping and crouching. (Tr. at 81-103). However, the ALJ considered Roberts more limited based on his allegations and he limited him to sedentary work.

With respect to Roberts's Step Two argument, he did not allege knee problems, vision problems, obesity, or psoriasis on his application. (Tr. at 184). *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011)(in affirming ALJ's finding of no mental impairment, the court noted that claimant did not allege mental impairment on the application for benefits). As for knee problems, an x-ray of the right knee in April 2014 showed no abnormalities. (Tr. at 1302). Roberts complained of popping

6

in his knee joints in 2014 but he said that when he wore braces, he felt much better. (Tr. at 1284, 2826). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). In June 2014, Roberts demonstrated no joint swelling or muscle pain. (Tr. at 1314-1322). On December 30, 2014, the day before he was last insured for purposes of Title II benefits, Roberts's doctor prescribed prednisone for his knee pain. (Tr. at 2760). Two weeks later, Roberts told his doctor that his knees felt better, and the doctor said he was not sure what Roberts was being braced for. (Tr. at 2755-2758). Physical exam was normal, with full range of motion in the knees bilaterally. *Id*. Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

An MRI of the right knee taken on February 10, 2015, did show a meniscus tear. (Tr. at 1771, 1813). But Roberts did not treat his knee pain up until right before the end of the relevant time-period and he improved with treatment. The ALJ properly discounted knee pain as an impairment because the evidence from the relevant time-period was so sparse, and in these cases, for an impairment to be found disabling, it must last or be expected to last not less than 12 months. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). Roberts did not show that, and evidence of impairments outside of the relevant time-period are not germane for determining

disability. *Freeman v. Apfel*, 208 F.3d 687, 691 (8th Cir. 2000).

Roberts did receive a diagnosis of psoriasis during the relevant time-period, but his VA doctor found that the rashes covered less than 5% of his body, and his psoriasis was treated conservatively with topical medication and ointment. (Tr. at 713, 1328-1330). The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). Moreover, the VA doctor said that Roberts's skin condition did not affect his ability to work. (Tr. at 1330). And his VA disability rating for psoriasis was 0%. (Tr. at 1791).

As for vision and hearing loss, Roberts denied any significant impairment in vision in November 2013. (Tr. at 559). In September 2014, he denied hearing loss. (Tr. at 2819). In October 2014, the VA examiner noted no significant change or decrease in hearing. (Tr. at 247). Hearing loss and tinnitus did not impact Roberts's ability to work, according to the VA assessment that month. (Tr. at 2797-2800). At a March 2015 VA audiology consult, Roberts did demonstrate moderate hearing loss, but again, that was outside the relevant time-period. (Tr. at 1805-1806). Roberts did not require aggressive treatment for vision problems and no consultative or reviewing doctor found vision to be a significant impairment during the relevant time-period.

Finally, Roberts did not allege obesity on his application paperwork (Tr. at 184). As well, Roberts turned down numerous referrals from the VA to address his weight. (Tr. at 408, 439, 523, 966, 1003, 1032, 1114, 2388). He did not have any cardiovascular or pulmonary conditions common to obese persons. The records do not show that obesity significantly limited Roberts functionally.

Roberts also alleges that his psychiatric issues were disabling. The ALJ did find affective disorder, anxiety disorder, and personality disorder to be severe impairments, even though multiple examiners found no significant functional limitations due to mental illness. (Tr. at 81-103, 308, 538, 556). At a 2011 psychiatric examination Roberts said his medications worked and he said he was "always in a good mood." (Tr. at 299-303). Also, Roberts did not avail himself of regular professional mental health treatment and he did not require inpatient hospitalization. Moreover, Roberts said on his function report that he could prepare meals, watch TV, pay bills, count change, handle bank accounts, and spend time with others. (Tr. at 212-220, 1357). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). The ALJ considered this evidence and the opinions of the DDS consultants, who found Roberts capable of semi-skilled work. (Tr. at 86, 105). The ALJ credited Roberts alleged mental health symptoms and limited him to unskilled work.

It should be noted that Roberts was not always compliant with treatment. He did not show up for several physical therapy sessions and missed one phototherapy treatment for psoriasis. (Tr. at 834-839, 2755). A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of his alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

Roberts's RFC argument fails for the reasons outlined above. The ALJ's limitation to sedentary unskilled work accounted for things like improvement with treatment, conservative treatment plans, mild objective testing results, and Roberts's ability to do activities of daily living. The RFC was also bolstered by multiple consultative opinions stating that Roberts was only mildly limited by his conditions. Also, while an ALJ has a duty to develop the record further if evidence is in conflict or insufficient, such was not the case here. The experts were in agreement about functional limitations in this case; and, as the Commissioner points out in his brief, a new consultative examination conducted three years after the relevant time-period, purporting to show limitations before 2014, would have been unnecessary and superfluous. The record was adequately developed.

## IV. <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision that Roberts was not disabled. The ALJ did not err at Step Two, the RFC incorporated

all of Roberts's limitations, and the record was fully developed.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 18th day of December, 2019.

_____
UNITED STATES MAGISTRATE JUDGE